## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELA FLORES, )<br>        Plaintiff, )<br>        v. )<br>DISTRICT OF COLUMBIA, )<br>        Defendant. )<br>                            ) | Civil Action No. 11-156 (AK) |

### MEMORANDUM OPINION

This matter is pending before this Court on Plaintiffs' Motion for [summary judgment on the issue of] Fees and Costs ("Fee Motion") and Memorandum in support thereof ("Memorandum") [10]; Defendant's opposition to the Motion ("Opposition") [11]; and Plaintiff's reply to the Opposition ("Reply") [12].[1]  Plaintiff Angela Flores ("Plaintiff") has requested $1,061.75 in legal fees and costs, a portion of which is contested by Defendant District of Columbia ("Defendant" or "the District") on grounds that the documentation supporting such claim is inadequate; the hourly rate charged by Plaintiff's counsel is excessive and some of counsel's billing entries are "remote" in time.  (Opposition, Exh. 1 [Defendant's chart of proposed allowable fees and reasons for fee reductions].)[2]

### I. BACKGROUND

Plaintiff is the parent of a minor child who prevailed in an administrative action brought pursuant to the Individuals with Disabilities Education Act and the Individuals with Disabilities

---

[1]This same Fee Motion is filed in multiple cases involving claims for attorneys' fees and costs; the Plaintiff in this action is Angela Flores.

[2]The Court notes that Defendant's chart erroneously references Plaintiff's fee claim for $1,061.75 as Civil Action No. 166 but that civil action relates to a different fee claim by Plaintiff.

in Education Improvement Act ( collectively "IDEA"), 20 U.S.C. § 1400 *et seq.* Pursuant to 20 U.S.C. §1415(i)(3)(B), a court may award attorney's fees to a parent who prevails in an IDEA proceeding. Prior to filing this civil action, the Plaintiff participated in a January 7, 2008 due process hearing wherein the Hearing Officer determined that DCPS's "rejecti[ion] [of counsel's] election on behalf of his client was arbitrary and capricious." (January 9, 2008 Hearing Officer Interim Order ("HOD") at 5, attached to Notice of Removal [1].) The Hearing Officer further noted that "the [Consent] Decree clearly contemplates that DCPS would work cooperatively with Petitioners' attorneys in facilitating compensatory education awards . . . [and] [DCPS's] decisions to ignore [counsel's] unambifuous election of an MDT meeting instead of a product from the Catalog violated the specific terms and intent of the Decree." (*Id.*) The Hearing Officer, *inter alia,* ordered DCPS to coordinate scheduling of the MDT meeting to "discuss and determine the form and amount of compensatory education to which Petitioner is entitled . . . ." (*Id.* at 6.)

The District does not dispute Plaintiff's prevailing party status in this case but the District does note its objection to Plaintiff's "inadequate documentation" in a chart attached to its Opposition as Exhibit 1. The District proffers no explanation for this objection other than its claim that the HOD in this case "appears identical" to another HOD in a case involving a different Plaintiff. Comparing the February 22, 2008 Impartial Due Process Hearing Officer's Decision in the other case with the January 9, 2008 Interim Order in the instant case (both referenced by the District as HODs), this Court notes that while it is accurate that both HODs generally address DCPS's compliance with the Consent Decree, the HODs are not otherwise alike. Furthermore, the HODs were prepared by different Hearing Officers; the hearings in the

two cases were held on different dates and the separate Plaintiffs are identified in each HOD. This Court finds no support for the District's claim of inadequate documentation.

Plaintiff originally filed her complaint for legal fees and costs with the Small Claims and Conciliation Branch of the Superior Court of the District of Columbia. Defendant removed this and other simultaneously filed cases to this Court and the parties subsequently consented to the referral of all such cases to the undersigned Magistrate Judge for all purposes. The parties were directed to brief the issues in these cases in the form of motions for legal fees and responses thereto.

## II. LEGAL STANDARD

The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party. 20 U.S.C. §1415(i)(3)(B). An action or proceeding under IDEA includes both civil litigation in federal court and administrative litigation before hearing officers. *Smith v. Roher*, 954 F. Supp. 359, 362 (D.D.C. 1997); *Moore v. District of Columbia*, 907 F.2d 165, 176 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 998 (1990).

The plaintiff has the burden of establishing the reasonableness of any fee requests. *See In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995); *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.") "An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Smith*, 954 F. Supp. at 364 (citing *Hensley v. Eckerhard*, 461 U.S. 424, 433 (1983)); *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The result of this calculation is the "lodestar" amount. *Smith*, 954 F. Supp. at 364.

20 U.S.C. §1415(i)(3)(C) states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §1415(i)(3)(C). To demonstrate a reasonable hourly rate, the fee applicant must show: an attorney's usual billing practices; counsel's skill, experience and reputation; as well as the prevailing market rates in the community. *Covington*, 57 F.3d at 1107. The determination of a "market rate for the services of a lawyer is inherently difficult" and is decided by the court in its discretion. *Blum*, 465 U.S. at 896 n.11. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence . . . that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* An attorney's usual billing rate may be considered the "reasonable rate" *if it accords with the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation. Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C.Cir. 1993) (emphasis added).

A party moving for summary judgment on legal fees accordingly must demonstrate prevailing party status and the reasonableness of the fees requested in terms of hours spent and hourly rate. Under Fed. R. Civ. P. 56 (a), summary judgment shall be granted if the movant shows that there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The court is required to draw all justifiable inferences in the nonmoving party's favor and to accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. The nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. Nor may the non-moving party rely on allegations or conclusory statements; instead, the non-moving party is obliged to present specific facts that would enable a reasonable jury to find it its favor. *Greene v Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### III. ANALYSIS
### A. Reasonableness of Hourly Rates

Plaintiff seeks fees for the services of two lawyers and three paralegals, to be paid at the following rates: $475.00 per hour for Douglas Tyrka, an attorney with approximately 10 years experience during the relevant time period; $268.00 per hour for Zachary Nahass, an attorney with approximately 1-2 years experience during the relevant time period, and $146.00/$150.00 per hour for Patrick Meehan, Yanet Scott and Olivia West, who were paralegals with the firm Tyrka & Associates during that same period of time.[3] (Plaintiff's Itemization of Fees/Expenses, attached to Notice of Removal [1]; Fee Motion [10], Exh. 2 [Verified Statement of Douglas Tyrka ("Tyrka")] ¶¶ 8 -11, 15.) According to Tykra's Verified Statement ("Verified Statement"), "[t]he hourly rates in the itemization are the rates Tyrka & Associates has customarily charged." (Exh. 2 ¶4.)

Tyrka further asserts that "clients have retained Tyrka & Associates with the understanding and agreement that the client would retain full responsibility for all fees regardless

---

[3] The law firm's hourly rate for paralegal/law clerk charges occurring after May 31, 2008 increased from $146/hour to $150/hour, even though the "enhanced" *Laffey* Matrix rates increased from $146/hour to $152/hour during that same time.

of what was reimbursed by third parties, at rates consistent with 'the *Laffey* [M]atrix' as adjusted per the finding in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000), and other cases." (Exh. 2 ¶4.)[4]  Plaintiff relies upon the rates set forth in the "enhanced" *Laffey* Matrix in her request for attorney's fees but Tyrka's Verified Statement does not indicate how frequently Plaintiff's counsel is paid at these "enhanced" *Laffey* rates.[5]  Nor has counsel presented affidavits attesting to the actual billing rates of lawyers who do similar IDEA work. Furthermore, the Plaintiff has not provided specific information about the nature or complexity of the IDEA administrative work performed in this case.

Plaintiff asserts that in order to demonstrate prevailing market rates, she may "point to such evidence as an updated [enhanced] version of the *Laffey* Matrix or the U.S. Attorney's Office ["USAO"] Matrix, or [her] own survey of prevailing market rates in the community." (Memorandum in support of Fees Motion ("Memorandum") at 8 (citing *Covington*, 57 F.3d at

---

[4]The *Laffey* Matrix is "a schedule of charges based on years of experience" developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), as modified by *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988).  The *Laffey* Matrix was first developed based upon information about the prevailing rates charged for complex federal litigation in the District of Columbia, and it is maintained by the United States Attorney's Office for the District of Columbia and is updated annually to reflect increases in the local Consumer Price Index.  *See Laffey* Matrix - 2003-2012, n.3, *available at:* htttp://www.justice.gov/usao/dc/dividions/civil_Laffey_Matrix_2003-2012.pdf.

The "enhanced" *Laffey* Matrix is a schedule of fees based on the original *Laffey* Matrix, with adjustments to reflect increases in the national Legal Services Index, prepared by the United States Bureau of Labor Statistics.  (Fee Motion, Exh.3.)

[5]*See generally MacClarence v. Johnson*, 539 F.Supp.2d 155, 160 (D.D.C. 2008)(expressing concern that "standardized hourly rates overcompensate lawyers whose practices are contingent fee based and therefore compensated at an hourly rate they never charge and none of their clients could pay").

1109 (additional citation omitted))). In the *Covington* case, which involved allegations of civil rights violations, the Court of Appeals for the D. C. Circuit did look to *Laffey* rates for prevailing market rates but the relevant market therein was "complex federal litigation," 57 F.3d at 1110. In contrast, this case involves IDEA litigation, which is *not* complex federal litigation because most if not all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearings. Accordingly, the *Laffey* Matrix rates are inapplicable as prevailing market rates.

Plaintiff additionally relies upon *Rooths v District of Columbia*, Civil Action No. 09-0492, Report and Recommendation of March 31, 2011, and *Friendship Edison Pub. Charter Sch. v. Suggs*, Civil Action No. 06-1284, Motion for Attorneys' Fees of July 10, 2008 and Memorandum Opinion of March 30, 2009 at 5-8. (Fee Motion, Exhs. 5-7).[6] According to Plaintiff, in these two IDEA cases litigated in this United States District Court, the firm's clients received an award of fees "based on rates exactly in line with those presented here, . . . ." (Memorandum at 8.)

As a preliminary matter, this Court notes that the mere showing that a high hourly rate was approved in another case does not in and of itself establish a new market rate or prove that the new rate is reasonable. Furthermore, Plaintiff's reliance on *Rooths v District of Columbia*, Civil Action No. 09-0492, Report and Recommendation of March 31, 2011 at 10-11 (Fee Motion, Exh. 5), is misplaced because the trial court ultimately rejected the application of

---

[6]Plaintiff relies on *Friendship Edison Pub. Charter Sch. v. Suggs*, Civil Action No. 06-1284, Motion for Attorneys' Fees of July 10, 2008 and Memorandum Opinion of March 30, 2009 at 5-8, but this case is inapposite because there was no challenge to the reasonableness of the hours expended by counsel or the hourly rates in that case.

enhanced *Laffey* rates, applied *Laffey* Matrix rates as a starting point, and then reduced those rates by 25%. *Rooths v District of Columbia*, 802 F.Supp.2d 56, 63 (D.D.C. 2011).

In *Rooths*, the Honorable Paul L. Friedman noted that "[i]n this circuit, the rates contained in the *Laffey* Matrix are typically treated as the highest rates that will be presumed to be reasonable when a court reviews a petition for statutory attorneys' fees." 802 F Supp. 2d 61. The trial court declined "to approve as reasonable the inflated rates contained in a proposed alternative fee matrix." *Id.*; *see Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 176 (D.D.C. 2010) (in determining prevailing market rates, the court declined to apply enhanced *Laffey* rates). The *Rooths* court further refused to apply enhanced *Laffey* rates, in part because it found that the "[enhanced *Laffey*] matrix was generated using *national* statistics rather than measurements particular to the District of Columbia area." 802 F. Supp.2d at 62 (emphasis in original); *see also DL v. District of Columbia*, 256 F.R.D. 239, 243 (D.D.C. 2009) (because the USAO [*Laffey*] Matrix accounts for price inflation within the local community, it more aptly focuses on the relevant community than the [enhanced] *Laffey* Matrix based on the legal services index). The *Rooths* court commented that "[w]hile it is doubtless true that some sectors of the legal services industry have experienced rapid fee inflation in recent years, [it was] unconvinced that fees associated with IDEA litigation in the District of Columbia have increased at the same rate." 802 F. Supp. 2d at 62.

Recognizing the difficulty courts encounter in determining what are reasonable legal fees, this Court agrees with the rationale set forth in *Rooths,* and finds that the Plaintiff's reliance on an enhanced *Laffey* Matrix is unsupported because such Matrix does not provide an accurate representation of District of Columbia legal fees applicable to IDEA cases. Nor has Plaintiff

demonstrated that IDEA litigation involving administrative hearings is the type of "complex federal litigation" encompassed by the *Laffey* rates. *See McClam* v. *District of Columbia*, Civil Action No. 11-381 (RMC), September 6, 2011 Memorandum Opinion at 8 (declining to apply *Laffey* rates in part on grounds that "IDEA cases are generally not complex [and in that case,] Plaintiffs . . . pointed to no novel issue or other complexity that turned this, particular IDEA case into a complicated piece of litigation.")[7]

Defendant's argument against imposition of *Laffey* rates primarily focuses on the *Rooths* and *McClam* decisions, *supra.* but the Defendant also asserts that "Plaintiffs have made no serious attempt to show that rates under the *Laffey* Matrix are appropriate in this case or, more specifically, that *Laffey* rates were necessary to attract competent counsel in the underlying, special education matters." (Opposition at 13.)[8] Defendant further argues that there is no "inherent right to *Laffey* rates." (Opposition at 13 (citation omitted)); *see Lively v Flexible Packaging Assoc.*, 930 A.2d 984, 990 (D.C. 2007) (accepting the *Laffey* Matrix as one legitimate means of calculating attorney's fees and using it as a starting point instead of an automatic application). Federal courts do not automatically have to award *Laffey* rates but instead they can look at the complexity of the case and use their discretion to determine whether such rates are warranted. *See Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1, 4-5 (D.D.C. 2005) ( awarding

---

[7]The *McClam* court acknowledged that "[f]ederal district courts in this circuit disagree whether *Laffey* rates should be applied in IDEA cases." *McClam* Memorandum Opinion at 6 (citations omitted).

[8]*See Kenny A. v. Perdue*, 130 S. Ct. 1662, 1672 (2010) "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case"); *see also Lively v. Flexible Packaging Association*, 930 A.2d 984, 990 (D.C. 2007) (cautioning that the goal of fee-shifting provisions is not to provide counsel with a windfall but to attract competent counsel).

fees at a rate 25% less than *Laffey* in a "relatively straightforward negligence suit").

This Court follows the reasoning of the *Rooths* case and other cases declining to apply enhanced *Laffey* rates. Considering that this is a straightforward case seeking IDEA legal fees, this Court concludes that the Plaintiff has failed to demonstrate that the hourly rates set by her counsel, which are based on enhanced *Laffey* rates, are reasonable.[9] Such enhanced rates do not reflect what the local legal market will bear in terms of legal fees for IDEA litigation. Using the [USAO] *Laffey* Matrix as a starting point for determination of a reasonable hourly rate, this Court determines that the hourly rate for Douglas Tyrka [attorney with 10 years experience] would be $315 instead of $475; the hourly rate for Zachary Nahass [attorney with 2 years experience] would be $215, instead of $268, while the rate for a paralegal/law clerk [Patrick Meehan, Yanet Scott and Olivia West] would be $125/$130 instead of $146/$150.

These rates should be further reduced however because the *Laffey* Matrix rates are the presumed maximum rates appropriate for "complex federal litigation," *Covington v. District of Columbia*, 57 F.3d at 1103, and IDEA litigation generally does not fall within that category. The case at issue is no exception to that general rule insofar as it involves a routine administrative proceeding summarized in the Hearing Officer's Decision dated January 9, 2008 (HOD [1]) and the time spent [billed] in preparation for the hearing was nominal. (Itemization of Fees/Expenses.) In such a case, an hourly rate below the *Laffey* Matrix rates is appropriate. *See Wilson v. District of Columbia*, Civil Action No. 09-2258, 2011 WL 1428090, at *3 (D.D.C.

---

[9]By statute the Court determines the reasonableness of the hourly rate for the legal fees. The negotiated legal fee hourly rate between the attorney and his client may be more or less than the hourly rate set by the Court.

Apr. 14, 2011) (*Laffey* Matrix is "not generally applicable to IDEA cases because they are not usually complex"); *A.C. ex rel. Clark v. District of Columbia*, 674 F.Supp.2d 149, 155 (D.D.C. 2009) (finding the USAO *Laffey* inapplicable in an IDEA case where "almost all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearing"); *Agapito v. District of Columbia*, 525 F.Supp.2d 150, 155 (D.D.C. 2007) (adjusting attorney fee award and declining to rely on the *Laffey* Matrix for these "relatively simple and straighforward IDEIA cases"). The Court will therefore award fees at an hourly rate equal to three-quarters of the USAO *Laffey* Matrix rate, which is $236.00 for Tyrka, $161.00 for Nahass and $94.00/98.00 for Meehan, Scott and West.[10]

### B. Challenges to Time Charges

Defendant claims that some of the hours billed by Plaintiff's counsel should not be compensated because they are too remote in time as to "preclude a meaningful relationship with the hearing." (Opposition at 16, citing *Czarniewy v. District of Columbia*, 2005 U.S. Dist. LEXIS 5161, at *11 (D.D.C. March 25, 2005)). *See also Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (where administrative fee charges have no temporal proximity to the proceeding on which the right to fees is based but instead appear to be administrative matters between counsel and his client, these charges are not appropriate for reimbursement). Defendant asserts that "[t]he statute does not contemplate an undefined form of ongoing representation of students [but instead] [i]t quantifies the activities for which school

---

[10]Defendant notes that a 25% reduction in *Laffey* Matrix rates brings these fees in line with its DCPS Fee Guidelines (Opposition at 15); however, it is not the intent of this Court to mirror the DCPS Fee Guidelines but instead to apply a percentage reduction that represents the fact that most IDEA litigation [involving administrative proceedings] is not complex federal litigation warranting the application of *Laffey* Matrix rates.

districts are obliged to reimburse legal representation to the administrative process described in 20 U.S.C. §1415. . . ." (Opposition at 16.)

A review of the time sheets submitted by Plaintiff shows that the time charges noted by counsel have sufficient temporal proximity to the date of the HOD. Some of the time entries pre-date and include the due process hearing, reflecting preparation for and attendance at the hearing; several time entries note the hearing and counsel's actions taken in response to the Hearing Officer's Determination; and finally, some time entries following the HOD reflect follow-up by
counsel, including time spent ensuring HOD compliance. This Court will not further reduce time charges based on Defendant's claim that some charges are remote.

### C. Costs

Plaintiff seeks costs in the amount of $73.50 for expenses arising from copying ($.10 per page) and faxing ($1.00 per page). Costs for copying, faxing and postage are customarily included in fee awards in IDEA litigation. *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 n.7 (D.D.C. 2004). These total costs are not contested by the Defendant and will be awarded to the Plaintiff.

### D. Fees and Costs Awarded

The amount of fees and costs requested by Plaintiff is $ 1,061.75, which can be broken down into $988.25 for legal fees, and $ 73.50 for costs. Defendant has not contested the costs. The legal fees claimed were based on .75 hour billed at $475.00/hour, 1.75 hour billed at $268.00/hour, .75 hour billed at $146.00/hour and 1.25 hours billed at $150.00/hour. This Court has determined that hourly rates based on 75% of the *Laffey* Matrix rate are applicable, which

means that .75 hour is billed at $236.00/hour, 1.75 hours is billed at $161.00/hour, .75 hour is billed at $94.00/hour, and 1.25 hours is billed at $98.00/hour.  Total fees thus equal $653.00, and total costs equal $73.50, which together total $726.50

 

DATED: May 4, 2012

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE